EXHIBIT 5

LAW OFFICES OF
# Greenan, Peffer, Sallander & Lally LLP

2000 CROW CANYON PLACE, SUITE 380
POST OFFICE BOX 10
SAN RAMON, CALIFORNIA 94583

TELEPHONE
(925) 866-1000

FACSIMILE
(925) 830-8787

WRITER'S E-MAIL ADDRESS:

RSALLANDER@GPSLLP.COM

March 7, 2018

**Via Email Only**
Maureen.manning@atsol.com

Maureen Manning, Associate General Counsel
American Traffic Solutions, Inc.
1150 N. Alma School Road
Mesa, AZ 85201

      Re: *The People of the State of California v. The Hertz Corporation, et. al*,
         San Francisco County Superior Court, Case No. CGC-17-557336

| | |
|---|---|
| Insured: | ATS Consolidated, Inc. |
| Policy No.: | CH16DOL6146021V |
| Claim No.: | DOL287106 |
| Insurer: | Navigators Insurance Company |

Dear Ms. Manning:

    Navigators Insurance Company retained us to review the referenced action in the context of the insurance policy Navigators issued to your company, and to communicate with you on the coverage issues. As you know, Navigators has been investigating this matter subject to reservation of rights. This letter supplements Navigators' prior letters and emails regarding coverage and the reservation of rights.

    In the course of its investigation, Navigators has discovered the existence of two cases against ATS for "related wrongful acts" that were filed prior to the inception date of the Navigators policy. Because the policy deems all claims for related wrongful acts to be made on the date of the first such claim, the present action does not constitute a claim first made during the policy period of the referenced policy, and therefore is not covered.

    The purpose of this letter is to advise you of Navigators' determination that there is no coverage or potential for coverage for this claim under the Navigators policy, that Navigators will not reimburse ATS for any further defense fees or expenses, and that Navigators demands reimbursement from ATS for the defense expenses previously paid by Navigators.

GREENAN, PEFFER, SALLANDER & LALLY LLP

## BRIEF FACTUAL BACKGROUND

On March 1, 2017, plaintiff People of the State of California, acting through San Francisco City Attorney Dennis J. Herrera, filed a complaint against defendants The Hertz Corporation, American Traffic Solutions, Inc., ATS Processing Services, L.L.C., American Traffic Solutions Consolidated, L.L.C., and PlatePass, L.L.C., in San Francisco County Superior Court, case no. CGC-17-557336.

On August 4, 2017, plaintiff filed a First-Amended Complaint ("FAC") for injunctive relief and civil penalties for violations of Business & Professions Code sections 17200, Unfair Competition Law ("UCL") and 17500, False Advertising Law ("FAL").

The plaintiffs allege that Hertz partnered with ATS to offer a so-called "optional" toll service called PlatePass that allows drivers to bypass cash collection lanes on the bridge. Hertz customers cannot decline PlatePass when reserving their rental cars. Customers are afforded no opportunity to make any decision regarding PlatePass in the booking process. They do not accept, decline, choose or opt out of the service.

Hertz allegedly marketed PlatePass as a convenience to help renters avoid the delay associated with paying cash at a toll collection booth by allowing them to use the faster electronic toll collection lanes. According to the complaint, since March 27, 2013, the Golden Gate Bridge has not had the slower cash collection booths, having converted to all electronic tolling. Thus, according to the complaint, the marketing of faster transit across toll bridges was a misrepresentation when applied to the Golden Gate Bridge.

Moreover, in the context of the Golden Gate Bridge with its 100 percent electronic toll lanes, PlatePass was not optional. It would be triggered by passing through the toll lanes even if the renter had chosen an alternative toll payment method. (Motorists crossing the Golden Gate Bridge had the option to make a one-time payment up to 30 days before or within 48 hours after crossing the bridge, or to pay a toll invoice within 21 days of receipt. Even if a Hertz renter knew of these alternatives and chose one of them, merely passing over the bridge triggered PlatePass.)

Plaintiffs allege that defendants charge significant fees to customers to use PlatePass. This per diem charge for every day of car rental is triggered when the renter first drives through an electronic toll booth and applies to every day of the rental even if not used every day. If PlatePass is used for a single bridge crossing, the customer is charged a $4.95 service fee for each day of the rental, including any days on which PlatePass is not used, up to a maximum of $24.75 per rental, plus incurred tolls at the Toll Authority's cash toll rate or highest undiscounted toll rate. By simply driving over the Golden Gate Bridge a single time, each renter is charged not only the undiscounted toll rate (i.e. the cash rate not the discounted electronic toll rate), but up to $24.75 in service fees.

Hertz allegedly provides renters credit card information to ATS, who charges customers without providing disclosures or receiving consent.

The allegations in the present case are substantially similar to allegations made against ATS in two prior lawsuits.

2

On December 10, 2009, seven years before the Navigators policy period, plaintiff Susan Doherty filed a lawsuit against ATS and Hertz in the Burlington County, New Jersey Superior Court that defendants later removed to the United States District Court for the District of New Jersey (*Susan Doherty v. The Hertz Corporation, American Traffic Solutions, Inc., and PlatePass LLC,* Civil No. 10-359-NLJ-KMW, U.S. District Court of the District of New Jersey). On March 26, 2010, plaintiff Dwight Simonson sued defendants in the same court. The Simonson/Doherty plaintiffs alleged similar claims against defendants regarding the PlatePass electronic toll payment system available for use by Hertz rental-car customers in many locations throughout the country. Among other things, Doherty and Simonson alleged that

- Hertz provided renters' credit card information to ATS, who placed charges on the credit cards without consent.
- Renters were automatically enrolled in the PlatePass program without notice.
- Defendants failed to adequately disclose service fees and certain toll-related charges associated with Hertz customers' use of PlatePass. (Simonson allegedly rented a Hertz car in Florida in 2009 and was later billed $10.75 by ATS for a 75 cent toll.)

On September 16, 2010, six years before the Navigators policy, plaintiff James Soper filed a class action lawsuit against defendant ATS in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, case number CACE 10-046095 (08). Plaintiff alleged that ATS is in the business of providing collection services to rental car companies, including Hertz, for the payment of tolls for use on Florida highways, bridges and tunnels by means of toll transmitters or transponders ("PlatePass program"), and that ATS charged customers for the tolls and an administrative fee for days where tolls were incurred, as well as an administrative fee for additional days regardless of whether the toll roads or tolls were used, in the amount of $2.50 a day or up to $10 a month.

Both lawsuits were settled – the Doherty/Simonson case for more than $11 million – prior to the Navigators policy.

### REVIEW OF POLICY

Navigators issued policy number CH16DOL6146021V to ATS Consolidated, Inc., for the policy period from October 24, 2016 to October 24, 2017. Under Section I. Insuring Agreements of the Directors and Officers Liability Coverage Part, the policy provides in relevant part that:

> C. . . . The Insurer will pay to or on behalf of the **Company** all **Loss** which the **Company** is legally obligated to pay as a result of a **Claim** first made against it during the **Policy Period** or the Discovery Period, if purchased, for a **Wrongful Act** by the **Company**.

This coverage grant is specific in its requirement that to be covered, something qualifying as a "claim," as that term is defined by the policy, must be first made during the policy period, 10/24/16 – 10/24/17. A claim made prior to the policy period is not covered.

# GREENAN, PEFFER, SALLANDER & LALLY LLP

In this context, we call your attention to Section VIII.B, which provides in relevant part that:

> All **Claims** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** will be considered a single **Claim**, and will be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

We believe the present litigation, the Doherty/Simonson case and the Soper litigation are a single claim because they involve "related wrongful acts."

The term "Related Wrongful Act" is defined in the Navigators policy to mean wrongful acts that are "logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision." (General Terms & Conditions, Sec. II.M.) The common facts, circumstances, etc. the present case, the Doherty/Simonson litigation and the Soper case include:

- the same defendants;
- the same business practice;
- PlatePass;
- charging rental car customers allegedly excessive fees for tolls
- alleged failure to disclose adequately service fees and certain toll-related charges associated with Hertz customers' use of PlatePass;
- harms that were causally related;
- harms that were not attenuated or unusual;
- harms that an objectively reasonable insured would expect to be treated as related.

The fact that the same wrongful business practice may give rise to claims by different claimants over time and different causes of action based on the laws of different states does not prevent the three class actions from being "related" under the clear terms of the Navigators policy.

Where, as here, there are related wrongful acts that are treated as one claim, the policy deems all the claims to have been made on the date the first such claim was made. Here that is December 10, 2009. As such, the subject action was not first made during the policy period as required by part C. of the insuring agreement under the D&O liability coverage, and is therefore not covered.

While the foregoing constitutes the basis upon which Navigators is disclaiming coverage for this matter at this time, it is not the only coverage issue that is apparent from our investigation. We wish to call your attention to these additional coverage defenses, even though Navigators is not relying on them to disclaim coverage at this time.

**GREENAN, PEFFER, SALLANDER & LALLY LLP**

The policy's D&O Liability Coverage contains a "related wrongful act" exclusion, which states that:

> A. The insurer will not be liable under the Coverage Part to make any payment of **Loss**, including **Costs of Defense**, in connection with any **Claims** made against any **Insured**:
>
> . . .
>
> 2. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Coverage Part is a renewal or replacement.

We have no information whether ATS gave prior insurers notice of the Doherty/Simonson or Soper cases. If it did, based on the policy exclusion, this claim would not be covered under the Navigators policy.

The plaintiff here seeks injunctive relief, restitution and civil penalties. Injunctive relief is not compensatory damages, and not covered under the "Loss" definition of the policy. Monetary damages are not available under California Business & Professions Code § 17203. The only nonpunitive monetary relief under California Business & Professions Code § 17203 is the disgorgement of money that has been wrongfully obtained or, in the language of the statute, an order restoring money which may have been acquired by means of unfair competition. Such relief is not compensatory damages and is excluded from the definition of "Loss".

Plaintiffs seek a civil penalty of $2,500 against each defendant for each violation of Business and Professions Code section 17200, under the authority of section 17206. Plaintiffs further seek a civil penalty of $2,500 against each defendant for each violation of Business and Professions Code section 17500. Civil penalties do not fall within the definition of "Loss" and are not covered.

Section III.A.11 of the policy provides that:

> The Insurer will not be liable under this Coverage Part to make any payment of **Loss,** including **Costs of Defense,** in connection with any **Claim** made against any **Insured**:
>
> . . .
>
> 11. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving the performance by any **Insured** of professional services for others for a fee or other compensation or remuneration; . . .

"Professional services" for the purposes of the exclusion are those "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or

5

**GREENAN, PEFFER, SALLANDER & LALLY LLP**

manual." In the case at bar, ATS is engaged in the professional services of making payments of toll fees for rental car customers. The wrongdoing alleged in the FAC involves misrepresentations and omissions of fees associated with PlatePass. Thus, the professional services exclusion may apply to preclude coverage for this claim.

The foregoing discussion of coverage issues is a preliminary one and not meant to be all inclusive. Conceivably, additional facts or theories may come to light that raise other coverage issues or cast those mentioned above in a new or different light. Navigators specifically reserves the right to assert any or all of the foregoing coverage issues, as well as to assert any modifications of those issues or new issues that may arise based on additional factual or legal developments. Nothing in this letter is intended to, nor should it be construed as waiving any coverage issue not specifically mentioned.

Should you have any facts or theories, which in your opinion bear in any way on coverage under the Navigators' policy, or specifically any of the coverage issues raised above, please bring them to our attention. We will give them serious consideration.

You may also have this matter reviewed by the California Department of Insurance by contacting them at: California Department of Insurance, Claim Services bureau, 11th Floor, 300 Spring Street, Los Angeles, California 90013, or by telephone at 1-800-927-4357.

Very truly yours,

Robert L. Sallander Jr.

RLS:ss